# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **PARALLAX ENTERPRISES, LLC** | **CIVIL ACTION NO.  16-3209** |
| **VERSUS** | **JUDGE BARBIER** |
| **CHENIERE ENERGY, INC., ET AL** | **MAGISTRATE JUDGE SHUSHAN** |

### PARALLAX ENTERPRISES, LLC'S
### REPLY MEMORANDUM IN SUPPORT OF MOTION TO REMAND

Plaintiff Parallax Enterprises, LLC ("Parallax") files this Reply Memorandum in support of its Motion to Remand.  In opposition to Parallax's jurisdictional arguments, Defendants have attempted to rewrite both the facts and the law applicable to this matter.  Defendants' arguments are, however, without merit.  The law clearly requires this Court to determine its jurisdiction before ruling on Defendants' venue arguments, and the facts clearly demonstrate that Parallax is a citizen of Texas.  Because Defendants are a Texas citizens, there is no complete diversity or subject-matter jurisdiction in this case.  The Court should remand this matter back to state court.

## I.   DEFENDANTS HAVE FAILED TO MEET *THEIR* BURDEN TO PROVE THAT THE PARTIES ARE COMPLETELY DIVERSE.

In their opposition, Defendants consistently claim that Parallax bears the burden of demonstrating the *absence* of complete diversity in this case.  This assertion is plainly wrong.  As the *en banc* Fifth Circuit has clearly stated "[t]o remove a case based on diversity, the diverse defendant must demonstrate that all of the prerequisites of diversity jurisdiction contained in 28 U.S.C. § 1332 are satisfied."[1]  Thus, Defendants, not Parallax, have the burden of proof on this Motion.  Defendants must prove that Parallax is not a citizen of Texas.  "The removal statute is .

---

[1] *Smallwood v. Illinois Cent. R. Co.*, 385 F.3d 568, 572 (5th Cir. 2004) (en banc); *see also*, *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002) ("The removing party bears the burden of showing that federal jurisdiction exists and that removal was proper."); *Robertson v. Exxon Mobil Corp.*, 814 F.3d 236, 239 (5th Cir. 2015) ("the party seeking removal bears the burden of establishing federal jurisdiction").

. . to be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand."[2]   Unless Defendants establish with <u>affirmative evidence</u> that Parallax is a citizen of Texas, which they have not, this Court must remand the case. Defendants have not carried *their* burden to prove that the parties are completely diverse.

As explained in Parallax's Motion to Remand, all four members of Parallax are Texas citizens, and thus not diverse from Defendants.  Defendants advance three arguments to assert that Parallax is not a citizen of Texas: (1) the Pledge Agreement and other various documents divested Parallax of the authority to admit new members; (2) Parallax has not demonstrated that it actually admitted new members; and (3) Mr. Houston is not domiciled in Texas.  None of Defendants' arguments have merit.

### A.	The Loan Documents do not divest Parallax of <u>authority</u> to admit new members.

Defendants do not cite a single provision of law that supports their argument that the various loan documents on which they rely prohibit Parallax Energy from transferring its membership interest in Parallax Enterprises to Messrs. Candelet, Evans, and Daniels.  Instead, Defendants argue that the terms of the security agreement granting them a security interest in Parallax Energy's membership interest in Parallax Enterprises render void any transfer of the membership interests.  This argument is contradicted by the plain provisions of the Texas Uniform Commercial Code, which explicitly provide that "[a]n agreement between the debtor and secured party that prohibits a transfer of the debtor's rights in collateral . . . does not prevent the transfer from taking effect."[3]   Indeed, lest there be any confusion, comment 5 to the relevant UCC provision specifically clarifies that the article "makes clear that in secured transactions

---

[2] *Gasch v. Hartford Acc. & Indem. Co.*, 491 F.3d 278, 281-82 (5th Cir. 2007).
[3] Tex. Bus. & Com. Code Ann. § 9.401.  Louisiana has an identical provision.  La. Rev. Stat. § 10:9-401 ("An agreement between the debtor and secured party which prohibits a transfer of the debtor's rights in collateral or makes the transfer a default does not prevent the transfer from taking effect.").

under this Article the debtor has rights in collateral (whether legal title or equitable) which it can transfer and which its creditors can reach."[4]  Thus, Texas law clearly permits a secured debtor to "transfer his interest [in the collateral] to a third party regardless of a provision in the security agreement prohibiting any transfer or making the transfer constitute a default."[5]

But even if that were not the case, the loan documents by their terms do not prevent Parallax Energy from admitting new Members to Parallax Enterprises. The Pledge Agreement expressly reserves Parallax Energy's right to "exercise any and all voting, management and/or other consensual rights and powers . . . for any purpose not inconsistent with the terms of this Agreement and the Secured Note."[6]  Admitting new Members to Parallax Enterprises is not inconsistent with the Secured Note or the Pledge Agreement.

By their express terms, both the Secured Note and the Pledge Agreement recognize that the ownership makeup of Parallax Enterprises may change over time.  Section 6.1 of the Secured Note, defining the "Events of Default," explains that a default will occur if "Martin Houston ceases to own . . . more than 50% of the limited liability company or other equity interests of any Loan Party," which includes Parallax Enterprises.[7]  The Pledge Agreement expressly adopts this provision of the Secured Note which contemplates that Parallax Enterprises and Parallax Energy may change their ownership structure so long as Mr. Houston retains 50% ownership.[8]

---

[4] Tex. Bus. & Com. Code Ann. § 9.401 cmt. 5.
[5] *Ford Motor Credit Co. v. Powers*, 613 S.W.2d 30, 34 (Tex. Civ. App. 1981).  Texas law in this respect is consistent with the UCC as generally adopted nationwide.  *See* 9B Hawkland UCC Series § 9-401:1 [Rev] ("the debtor may sell, exchange or otherwise dispose of the collateral even though it is subject to a security interest and even though the sale, exchange or other disposition is specifically prohibited by the security agreement").
[6] *See* Doc. 4-5, § 6.03(a).
[7] *See* Doc. 4-4, § 6.1(i); *see also id.* § 1.1 (defining "Loan Parties" to include the "Maker," Parallax Enterprises).
[8] *See* Doc. 4-5, § 8.01.

3

Moreover, nothing in the Pledge Agreement prohibits Parallax Energy from issuing equity interest to new members of Parallax Enterprises.[9]

　　If the parties had intended to require Mr. Houston to retain 100% ownership, they could have said as much.  The fact that they did not—and in fact expressly contemplated Mr. Houston owning less than 100% of the companies—establishes that the addition of members to Parallax Enterprises is acceptable, provided that Mr. Houston retains a "more than 50%" ownership interest, which he did.[10]

　　Cheniere's reliance on the organizational structure of the Loan Parties identified in the Secured Note is equally misplaced.[11]  The representation concerned an organizational chart specifically dated "April 2015" that identified Parallax Energy as the 100% owner of Parallax Enterprises, which was true when the Secured Note was signed.[12]  Cheniere never requested an update regarding the organizational structure of Parallax Enterprises, and Parallax Enterprises never made a misrepresentation about its organizational structure.  Instead, in each amendment to the Note, Parallax Enterprises represented generally that its prior representations will be correct as of the date of the amendment.  The only representation Parallax had made previously concerned the accuracy of a document dated "April 2015," and that representation remained true for each amendment.

　　But even assuming that Defendants' reading of the loan documents is correct and Parallax Energy represented that it owned 100% Parallax Enterprises at all times and covenanted

---

[9] Section 6.02 refers to Parallax Energy not issuing LLC interests of "the Borrow."  Doc. 4-5, § 6.02.  No other section uses the term "the Borrow," and it is never defined in the Pledge Agreement. It does not refer to Parallax Enterprises, which is specifically defined as the "Maker."

[10] *See* Declaration of Mr. Houston attached as Exhibit 1, at ¶3.  In fact, the transfer of membership interest from Parallax Energy to Mr. Houston and others put Parallax Enterprises in compliance with the loan documents and cured the technical default because prior to that action, Mr. Houston did not directly own at least 50% of Parallax Enterprises.

[11] Doc. 4-4, § 4.1(h).

[12] Notably, Parallax Energy is not defined as a Loan Party and thus the representation does not pertain to Parallax Enterprises' owner.

4

that it would not transfer its membership interest in Parallax Enterprises, such a provision in a security agreement <u>does not</u> prohibit the transfer from taking effect.  As such, nothing in the loan documents could possibly prevent the transfer from taking effect.   Therefore, Defendants' authority arguments are meritless, and this Court must recognize that, as of the time of removal, Parallax Enterprises had four members, all of which are Texas citizens for purposes of destroying diversity with Cheniere.

        **B.**       **Defendants' belated attempt to rewrite history should be rejected.**

Defendants' fallback position is that Parallax Energy's transfer of its membership interest is somehow defective because the minutes of the meeting admitting the new members do not reflect that Mr. Houston acted on behalf of Parallax Energy or Mr. Houston somehow lacked the authority to act on behalf of Parallax Energy.  This argument is also without merit. The Limited Liability Company Agreement of Parallax Energy clearly reveals that Mr. Houston had the authority to admit Messrs. Candelet, Evans, and Daniels as members of Parallax Enterprises. Mr. Houston is and has always been the sole member and chairman of Parallax Energy.[13]   The Parallax Energy LLC Agreement provides that the management of Parallax Energy is exclusively vested in its sole member and the company shall not have managers, but the sole member may appoint officers such as a chairman.[14]  As the sole member and chairman, Mr. Houston has:

> general executive charge, management and control of the properties, business and operations of the Company with all such powers as may be reasonably incident to such responsibilities; he may agree upon and execute all leases, contracts, evidences of indebtedness and other obligations in the name of the Company and may sign all certificates for membership interests of the

---

[13] *See* Declaration of Martin Houston at ¶¶2-3 attached as Exhibit 1; Limited Liability Company Agreement of Parallax Energy LLC at § 4, attached thereto as Exhibit A to Mr. Martin's Declaration.

[14] *Id*. at §§ 7, 8(a).

Company; and shall have all such other powers as may be permitted under the laws of the State of Delaware.[15]

Notably, Mr. Houston has the authority to take "action with respect to securities and membership interests of other entities."[16]  Specifically, he has the

> power to vote and otherwise act on behalf of the Company, in person or by proxy, at any meeting of holders of voting securities or interests held by the Company of or with respect to any action of holders of voting securities or interests of any other corporation or other entity in which the Company may hold securities and otherwise to exercise any and all rights and powers which the Company may possess by reason of its ownership of or voting securities or interest in such other corporation or other entity.[17]

Simply put, the Parallax Energy LLC Agreement specifically contemplates the type of transaction at issue here and specifically authorizes Mr. Houston to take the action he did.  When Mr. Houston acted to admit Messrs. Candelet, Evans, and Daniels as members of Parallax Enterprises, Parallax Energy was the owner and sole member of Parallax Enterprises.[18]  As the sole member, Parallax Energy was authorized to admit additional members in its discretion.[19]  Moreover, the Parallax Energy LLC Agreement specifically authorized Mr. Houston to act on Parallax Energy's behalf at any meeting of Parallax Enterprises.  Thus, there can be no serious contention that Mr. Houston lacked the authority to transfer Parallax Energy's membership interest in Parallax Enterprises to Messrs. Candelet, Evans, and Daniels.  As such, it is clear that Messrs. Candelet, Evans, and Daniels were actually admitted as members of Parallax Enterprises.  Because all three are citizens of Texas, Parallax is not diverse from Defendants.

This Court should reject Cheniere's suggestion that the documents do not indicate that Parallax Energy, as the sole Member of Parallax Enterprises, followed the proper procedure to

---

[15] *Id*. at §8(c).
[16] *Id*. at §8(e).
[17] *Id*.
[18] *See* Declaration of Martin Houston at ¶¶4 attached as Exhibit 1; original Limited Liability Company Agreement of Parallax Enterprises LLC at § 4, attached thereto as Exhibit B to Mr. Martin's Declaration.
[19] *Id*. at § 14.

admit new members to Parallax Enterprises because Mr. Houston "intended to act, and acted, solely in an individual capacity, rather than as an agent of Parallax Energy."[20]  Mr. Houston has provided sworn testimony that he admitted Messrs. Candelet, Evans, and Daniels as members of Parallax Enterprises in his capacity as the sole member of Parallax Energy and that this action is reflected in the minutes of a meeting of the members of Parallax Enterprises he attended on August 3, 2015 and in the amended LLC agreement, effective July 31, 2015.  There is no dispute that Mr. Houston has always been the sole Member of Parallax Energy, and there is no evidence to suggest or indicate that Parallax Energy had any means of acting other than *through* Mr. Houston.[21]

Cheniere's hypertechnical argument that Mr. Houston did not expressly reference Parallax Energy—an entity he undisputedly controls—elevates form over substance.  Mr. Houston cannot be prohibited from directing the two companies he completely controls because he did not write "Sole Member, Parallax Energy LLC" beneath his signature line.  In effect, Cheniere is offering a strained and contorted reading of the minutes and amended LLC Agreement designed to render them inoperative by ignoring very basic principles of contractual interpretation.[22]  Although insisting that Mr. Houston acted in his individual capacity when adding additional members to Parallax Enterprises, Cheniere fails to explain what this means or

---

[20] Opp. Memo. at 18.

[21] *F.D.I.C. v. Trans Pac. Indus., Inc.*, 14 F.3d 10, 12 (5th Cir. 1994) ("A corporation can act only through agents.").

[22] *Ironshore Specialty Ins. Co. v. Aspen Underwriting Ltd.*, 40 F. Supp. 3d 807, 815 (W.D. Tex. 2014) ("The primary goal of contractual interpretation is to discern and give effect to the written expression of the parties' intent, which in turn requires the Court to read all parts of the contract together and to strive to give meaning to every sentence, clause, and word to avoid rendering any portion inoperative."), *aff'd*, 788 F.3d 456 (5th Cir. 2015); *Transamerica Ins. Co. v. Avenell*, 66 F.3d 715, 722 (5th Cir. 1995) ("a basic tenet of contractual construction holds that, whenever feasible, an agreement is to be interpreted in a manner that renders performance possible rather than impossible."); Restatement (Second) of Contracts § 203 (1981) ("(a) an interpretation which gives a reasonable, lawful, and effective meaning to all the terms is preferred to an interpretation which leaves a part unreasonable, unlawful, or of no effect." ); *Texas E. Transmission Corp. v. Amerada Hess Corp.*, 145 F.3d 737, 742 (5th Cir. 1998) ("Contract provisions susceptible to different meanings should be interpreted to avoid neutralizing or ignoring any of them or treating them as surplusage and to preserve validity of the contract").

how Mr. Houston could act in an individual capacity to do this when he was not a member of Parallax Enterprises at the time and could only act as an agent for that entity in his capacity as a member of Parallax Energy.

Cheniere's argument that Mr. Houston acted only in his individual capacity is further undermined by the sole precedent on which it relies -- *F.D.I.C. v. Trans Pac. Indus., Inc.*[23]  In that case, a board chairman appealed a judgment holding him personally liable on promissory notes that he signed without expressly recognizing that he was signing in his representative capacity by following his signature with a display of agency status, such as his title in the represented institution.  Nevertheless, the court reversed and rendered judgment in his favor, recognizing that courts must "consider the face of the entire instrument" and "the context of business expectations."[24]  Importantly, it was never disputed that the company was bound by the officer's act.  The only issue was whether the officer was also liable in his individual capacity. The Fifth Circuit specifically mentioned the common corporate practice of requiring a corporate officer to sign twice, once for the corporation and once for himself, in cases where a party seeks to hold an officer responsible in his individual capacity.[25]  Here, the corporate minutes identify Mr. Houston as the sole member and chairman, and Mr. Martin never indicated he was acting in his individual capacity.  To suggest that Mr. Martin acted as an individual and not on behalf of Parallax Energy under these circumstances is contrary to the law, the facts, and common sense.

Accordingly, there can be no genuine dispute that Parallax had four members at the time of removal, any of which would have destroyed diversity for subject matter jurisdiction.

---

[23] 14 F.3d 10, 12 (5th Cir. 1994).

[24] *Id*.

[25] *Id*. (*citing Keels v. W.E. Turner*, 45 N.C.App. 213, 216–17, 262 S.E.2d 845, 847 ("[W]here individual responsibility is demanded, the nearly universal practice in the commercial world is that the corporate officer signs twice, once as an officer and again as an individual.") (*quoting* 19 Am.Jur.2d Corporations § 1343 (1965)); *Diversified Realty, Inc. v. McElroy*, 41 Wash.App. 171, 703 P.2d 323 (1985) (same) (citing 3A W. Fletcher, Private Corporations § 1119 at 170 (1975)).

**C.**   **Defendants have not offered any <u>evidence</u> to rebut the clear evidence that Mr. Houston is a Texas domiciliary.**

Finally, with regard to the citizenship of Mr. Houston, Defendants have offered no affirmative evidence regarding his domicile.  Instead, Defendants, who have the burden of proof on jurisdiction, rely solely on their attempts to discredit Parallax's evidence demonstrating that Mr. Houston is domiciled in Texas.  They attempt to shift the burden to Parallax to prove that Mr. Houston is <u>not</u> domiciled in the United Kingdom.  The law provides otherwise.  As the party with the burden of proof, Defendants bear the responsibility of proving Mr. Houston's domicile.  Mere assertions that Mr. Houston is domiciled in the United Kingdom, unsupported by evidence, will not suffice.  Moreover, there is simply no credible evidence that Mr. Houston is domiciled in the United Kingdom.  Mr. Houston became a permanent resident in the United States in 2006 after two years working in the United States on an immigrant visa.  His residence in the United States has been Texas.  Since he retired from BG Group in February 2014, he has spent less than 31 working days per annum in the United Kingdom and is a non-resident for tax purposes in the United Kingdom.  Although he is a UK citizen, he works full time overseas and is not considered and has not been treated as a resident of the United Kingdom under UK law.[26]  Mr. Houston works and resides in Texas, spends most of his time in Texas, and given the nature of his work for a company based in Texas, will continue to reside in Texas for the indefinite future.[27]  Accordingly, there can be no doubt that Mr. Houston is domiciled in Texas.

Thus, even if this Court were to somehow find that the loan documents prevented Parallax Energy from admitting new members and its efforts to do so were void, the case must still be remanded because Mr. Houston destroys diversity jurisdiction as the sole member of Parallax Energy.

---

[26] Exhibit 1 at ¶¶ 7.
[27] *See* Declaration of Mr. Christopher Bowen Daniels, attached as Exhibit 2.

9

### D.      Defendants are not entitled to jurisdictional discovery.

The party "opposing dismissal and requesting discovery" bears "the burden of demonstrating the necessity of discovery."[28]  A party is not entitled to jurisdictional discovery unless it shows that the discovery is likely to produce the facts needed to demonstrate the existence of jurisdiction.[29]  Defendants have not satisfied their burden of demonstrating that they are entitled to discovery and have presented no affirmative evidence that any of Parallax's clear evidence regarding its citizenship is false.  Defendants have not articulated precisely what facts they believe discovery will yield or how those facts would change the outcome of this Motion.  In the absence of such a showing, discovery is simply not warranted.  As a matter of law, Parallax Enterprises had the authority to admit new members, notwithstanding any security interest held by Cheniere.  No amount of discovery will change this fact.

## II.   THIS COURT LACKS AUTHORITY TO CONSIDER VENUE BEFORE SUBJECT-MATTER JURISDICTION.

Defendants persist in their insistence that this Court ignore Defendants' failure to demonstrate the existence of subject-matter jurisdiction in favor of their misplaced venue arguments.  This Court should not entertain Defendants' invitation to ignore clear and unambiguous Supreme Court precedent. Defendants misread *Sinochem*, a case which did not involve a legally straightforward question of subject-matter jurisdiction or a traditional venue dispute.  Rather, *Sinochem* involved a complex issue of first impression regarding the court's subject-matter jurisdiction, and an (ultimately meritorious) argument that the case could not be properly litigated in any United States Court.[30]  The entire case was dismissed on *forum non conveniens* before resolving the complex jurisdictional issue only because it was clear that

---

[28] *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 434 (5th Cir. 2014).
[29] *Id.*
[30] *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 435 (2007).

Plaintiff would be denied an "audience to a case on the merits."[31]  Here, Defendants are not asking this Court "to choose among threshold grounds for denying audience to a case on the merits," as a decision in Defendants' favor will not end the litigation but only change its situs. [32] Instead, Defendants ask this Court to abdicate the crucial subject-matter jurisdiction inquiry to another court -- one without jurisdiction to hear this matter.  Neither *Sinochem* nor any other case cited by Defendants supports such a result.   Indeed, *Sinochem* is frequently cited in this district for the proposition that jurisdictional questions must ordinarily be decided first.[33]

Defendants falsely suggest that other courts routinely ignore subject-matter jurisdiction in favor of other issues raised by the parties.  To the contrary, courts regularly reject requests to defer consideration of subject-matter jurisdiction.  For example:

- In *Burrus Mortgage Portfolio P'ship III v. N. Bank Ltd.*, a judge of this Court refused to consider *forum non conveniens* and improper venue arguments because the subject-matter jurisdiction question was not "particularly complicated or difficult."[34]

- In *McGee v. Arkel Int'l, LLC*, the court refused to rule on a motion to dismiss until *after* it satisfied itself of its jurisdiction.[35]

- In *A.O. Smith Corp. v. Am. Alternative Ins. Corp.*, a judge of this Court refused to consider personal jurisdiction before subject-matter jurisdiction.[36]

- In *Matte v. Sunshine Mobile Homes, Inc.*, the court insisted on considering subject-matter jurisdiction before personal jurisdiction because "considerations of judicial economy and restraint dictate that the court resolve the issue of subject matter jurisdiction first."[37]

[31] *Id.* at 431.
[32] *Id.* at 435.
[33] *Bollinger Shipyards Lockport LLC v. Northrop Grumman Ship Sys., Inc.*, No. 08-4578, 2009 WL 86704, at *2 (E.D. La. Jan. 12, 2009); *see also Landry v. Columbia Cas. Co.*, No. 14-220, 2014 WL 4674797, at *1 (E.D. La. Sept. 18, 2014); *White Oak Realty, LLC v. U.S. Army Corp of Engineers*, No. 13-4761, 2014 WL 4387317, at *3 (E.D. La. Sept. 4, 2014).
[34] No. 12-1445, 2013 WL 2250151, at *3 (E.D. La. Feb. 1, 2013).
[35] 716 F. Supp. 2d 572, 575 (S.D. Tex. 2009).
[36] No. 99-3347, 2000 WL 28177, at *2 (E.D. La. Jan. 12, 2000).
[37] 270 F. Supp. 2d 805, 812 (W.D. La. 2003).

11

- In *Leeds, Morelli & Brown, P.C. v. Hernandez*, the court refused to transfer based on the "first to file rule" and remanded the matter to state court for lack of subject-matter jurisdiction.[38]

These illustrative cases clearly demonstrate that, in the overwhelming majority of cases, district courts examine their subject-matter jurisdiction <u>before</u> considering other issues raised by the parties.[39]  The result in this case should be no different.

Notably, Defendants cite no Fifth Circuit or Supreme Court precedent that permits this Court to disregard the state courts' coequal stature and the consideration ordinarily accorded the plaintiff's choice of forum by ignoring blatant jurisdictional defects in favor of transferring a case. Instead, Defendants rely on inapposite district court cases which are plainly distinguishable and do not support their position.  For example, in *Woodlands Dev., LLC v. Regions Bank*, a state court matter was removed to federal court based on its relatedness to a bankruptcy proceeding pending in another district.[40]  The Plaintiffs, in seeking remand, argued not that the district court was wholly without subject matter jurisdiction, but that abstention pursuant to the bankruptcy abstention statute was appropriate.[41]  Defendants, on the other hand, requested that the matter be transferred to the related bankruptcy court.  In deciding to transfer the case without addressing the remand question, the district court held that "the jurisdictional question in this matter is necessarily intertwined with the pending bankruptcy proceedings, the Court finds that first considering defendants' transfer motions will serve the interest of judicial economy and that the bankruptcy court is best suited to resolve the issue of section 1334 jurisdiction."[42]  Thus, the primary issue in that case was not the plain absence of subject-matter jurisdiction, but whether it

---

[38] No. 05-1135, 2005 WL 2148994, at *1 (E.D.N.Y. Sept. 6, 2005).
[39] *See also*, *Mech. Equip. Co. v. GMP Sys., Inc*., No. 10-2452, 2011 WL 495435, at *3 (E.D. La. Feb. 7, 2011(considering subject-matter jurisdiction before personal jurisdiction); *Greco v. Hingle*, No. 00-2299, 2000 WL 1772654, at *2 (E.D. La. Nov. 30, 2000) (considering remand issue before motion to dismiss on other issues).
[40] No. CIV.A. 13-514, 2013 WL 3233472, at *2 (E.D. La. June 24, 2013).
[41] *Id*.
[42] *Id*

was <u>appropriate</u> for the bankruptcy court to adjudicate the related state-court action. Not surprisingly, the district court found that the bankruptcy court was in a better position to decide the bankruptcy issues in the case.[43]

## III. PARALLAX IS ENTITLED TO FEES

Defendants have not demonstrated that their removal of this case was objectively reasonable. Defendants' wishful attempts to rewrite history regarding the membership of Parallax, in the absence of *any* evidence, do not demonstrate a good-faith basis for removal. Indeed, Parallax went to great lengths to ensure that Defendants had the information they needed to conclude that Parallax was a citizen of Texas. Defendants decision to ignore that information and substitute their purposefully distorted version of the facts does not transform their wrongful removal into an objectively reasonable one.

## IV. CONCLUSION

The evidence offered by Parallax clearly demonstrates that Parallax is a citizen of Texas and thus not diverse from Defendants. Accordingly, this Court lacks jurisdiction over this case and Parallax's Motion to Remand should be granted.

---

[43] The Defendant's reliance on two other cases is equally inapposite. The plain absence of subject-matter jurisdiction was not an issue in *Aftab v. Gonzalez*, where the plaintiff sought to compel a federal agency to adjudicate his immigration application. 597 F. Supp. 2d 76, 78 (D.D.C. 2009). Defendants sought to dismiss the case based on a federal statute providing that certain types of agency action were not subject to judicial review or alternatively to transfer the case (which was brought in an improper venue) to the correct district. *Aftab* did not involve a removal from state court, and thus did not involve the important federalism concern of respect for co-equal state courts. Instead, a federal court presented with an undisputedly federal issue determined that the federal-law question could be more properly considered in the correct venue. Similarly, *Hardwick v. Factor*, a case also originally filed in federal court, was transferred because it was filed in an improper venue. No. CIV.A. H-10-5249, 2011 WL 1831706, at *1 (S.D. Tex. May 9, 2011). While there was a question as to whether the Plaintiff had validly pled the amount in controversy, it did not appear that there was a plain absence of diversity, as in this case. The failure to plead amount in controversy is an error that can be remedied by amendment of the complaint. 28 U.S.C.A. § 1653 (providing that defective jurisdictional allegations are subject to amendment). Of course, the absence of complete diversity cannot. *Hardwick* is plainly distinguishable and is of no help to Defendants.

Respectfully submitted,

**PHELPS DUNBAR LLP**


BY:     */s/ David L. Patrón*
        _____
        David L. Patrón, (Bar #22566)
        Thomas Kent Morrison, (Bar #25802)
        Arthur R. Kraatz, (Bar #35194)
        Canal Place | 365 Canal Street, Suite 2000
        New Orleans, Louisiana 70130-6534
        Telephone: 504-566-1311
        Telecopier: 504-568-9130
        Email:  patrond@phelps.com
                morrisok@phelps.com
                arthur.kraatz@phelps.com


        **COSSICH, SUMICH, PARSIOLA & TAYLOR**

        PHILIP F. COSSICH, JR., #1788
        pcossich@cossichlaw.com
        DAVID A. PARSIOLA, #21005
        dparsiola@cossichlaw.com
        BRANDON J. TAYLOR, #27662
        btaylor@cossichlaw.com
        ANDREW J. CVITANOVIC, #34500
        acvitanovic@cossichlaw.com
        MICHAEL T. NEUNER #36605
        mneuncr@cossichlaw.com
        8397 Highway 23. Suite 100
        Belle Chasse. Louisiana 70037
        Telephone: (504) 394-9000
        Facsimile: (504) 394-9110

**ATTORNEYS FOR PLAINTIFF PARALLAX
ENTERPRISES, LLC**

14

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that a copy of the foregoing was filed on this 17th day of May, 2016 with the Clerk of Court by using the CM/ECF system, which will send a notice of electronic filing to all participating counsel of record.

*/s/ David L. Patrón*

15